# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2011

No. 10-10136
Summary Calendar

Lyle W. Cayce
Clerk

EMMA BENAVIDES, individually and on behalf of all others similarly situated,

Plaintiff–Appellant

v.

CHICAGO TITLE INSURANCE CO.,

Defendant–Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:07-CV-1441-D

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Emma Benavides appeals the district court's denial of her motion for class certification. Benavides sued Chicago Title Insurance Co. ("Chicago Title") on behalf of a purported class for refusing to give her a title insurance premium discount mandated by Texas law. The district court denied class certification on the ground that Benavides had not shown that common questions would

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

predominate as required for a class seeking certification under Federal Rule of Civil Procedure 23(b)(3).  Benavides appeals, arguing that *Mims v. Stewart Title Guaranty Co.*, 590 F.3d 298 (5th Cir. 2009), controls.  Because *Mims* does not control and because the district court properly addressed *Mims*, we affirm the district court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Benavides filed a Complaint in district court on August 22, 2007, against Chicago Title, alleging that she and others similarly situated were denied a mandatory title insurance discount when she purchased a title insurance policy from Chicago Title.  Specifically, Texas Insurance Code Rate Rule 8 ("R-8") entitles a mortgage borrower to a discount on a title insurance policy issued on a loan to fully take-up, renew, extend, or satisfy an old mortgage when the new loan is issued within seven years of the initial mortgage and the initial mortgage was also covered by a title insurance policy.  THE BASIC MANUAL OF RULES, RATES AND FORMS FOR THE WRITING OF TITLE INSURANCE IN THE STATE OF TEXAS § 3 Rate Rule 8 (available at www. tdi.state.tx.us/title/titlem3b.html#R-8). Benavides alleges she was entitled to a discount of $370.40 after she refinanced her mortgage within two years after taking out the initial mortgage loan. Benavides alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b), and state-law causes of action for unjust enrichment, money had and received, and breach of implied contract.  The RESPA and unjust enrichment causes of action were previously dismissed by the district court on summary judgment.

As the district court noted in its order denying class certification, there is often no definitive way for a title insurer to determine, based on the documents available to it, whether or not a prior mortgage was covered by title insurance such that the new title insurance policy would qualify for the reissue discount. Chicago Title, like other title insurance companies, had a policy of giving the

No. 10-10136

discount when the borrower's file contained certain circumstantial evidence that the prior mortgage was insured. Benavides alleges that, regardless of Chicago Title's ad hoc policies, it routinely fails to give the discount when required. Chicago Title admits that, regardless of the circumstantial evidence in the borrower's file, the discount is mandatory for all borrowers who qualify.

Benavides sought to certify a class of "all persons who, within seven years after the date of their existing mortgage on their real property in Texas, refinanced or otherwise replaced their existing mortgage and were charged a premium for a new lender title insurance policy issued by Defendant Chicago Title Insurance Company that did not include the reissue discount." On December 9, 2009, the district court denied Benavides's motion for class certification. In its Order, the district court examined each of Benavides's purported questions common to the class. Those questions were:

(1) Whether the plaintiffs refinanced an existing mortgage within seven (7) years after the recording of the existing mortgage;

(2) Whether the plaintiffs qualify for the mandatory reissue discount in connection with the reissue lender title policy;

(3) The dollar amount of the reissue discount required to be applied to the plaintiff's transaction;

(4) Whether Defendant split the unearned discounts with its agents;

(5) Whether Defendant's splitting of the unearned premiums with title agents violated Section 8(b) of RESPA;

(6) Whether Defendant breached other legal duties to class members by failing to give them the reissue discount mandated by Texas law and retaining those unearned premiums; and

(7) Whether plaintiffs are entitled to recover three times the amount charged to them for the reissue lender title insurance policies, pursuant to 12 U.S.C. § 2607(d)(2).

3

No. 10-10136

The district court determined questions 4, 5, and 7 pertained only to Benavides's RESPA claim which had been dismissed. It determined that the remaining questions, while "common" in that each purported plaintiff would need the question answered, could not be determined on a class-wide basis using class-wide proof. Rather, each of the remaining questions had to be answered specifically and individually as to each plaintiff. Accordingly, the district court determined that none of the questions advanced by Benavides was common to the class and that Benavides had therefore failed to satisfy the predominance requirement of Rule 23(b)(3). The district court noted that the only "common" question—whether a borrower who qualified for the R-8 discount and did not receive it was entitled to a refund—was not in dispute as Chicago Title admitted the discount was mandatory for all borrowers who qualified. The district court therefore based its order denying certification on two grounds: "First, certification of the class would require an extensive file-by-file review to sort out the factual details as to each plaintiff. Second, there are no truly class-wide questions that would benefit from class determination."

Benavides filed a motion for reconsideration, arguing that *Mims*, which was decided by this court the same day the district court issued its order denying class certification, outlined a different evidentiary standard for liability and for class membership than followed by the district court. The district court denied the motion on December 23, 2009, noting that while the Fifth Circuit in *Mims* affirmed certification of a class based on factually similar state-law claims, the opinion did not call into question the district court's decision that there were no class-wide questions that would benefit from certification. Benavides was given permission to appeal the denial of class certification pursuant to Federal Rule of Civil Procedure 23(f), and this appeal followed.

4

No. 10-10136

## II. ANALYSIS

We review the denial of class certification for abuse of discretion. *See O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003). Because, however, a court by definition abuses its discretion when it applies an incorrect legal standard, we review such errors de novo. *Id.* While the "party seeking certification bears the burden of proof" and the district court has substantial discretion to grant or deny certification, the "district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

Rule 23(a) provides four prerequisites to a class action: (1) a class "so numerous that joinder of all members is impracticable"; (2) "questions of law or fact common to the class"; (3) named parties' claims or defenses "typical . . . of the class"; and (4) representatives that "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 606–08 & nn. 8, 9, 11, 13 (1997). In addition to these prerequisites, a party seeking class certification under Rule 23(b)(3) must also demonstrate "both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). "Whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) (citing *Castano*, 84 F.3d at 744).

In *Mims*, this court reversed the granting of class certification of a RESPA claim in a case with facts remarkably similar to the case at hand. The defendant in that case, Stewart Title Guarantee Company ("Stewart"), appealed certification of the state-law claims on the grounds that (1) the class was

5

improperly defined to include all plaintiffs who replaced their mortgage within seven years and who met one of Stewart's underwriting guidelines from which Stewart would assume the prior mortgage was covered by title insurance; and (2) the equitable nature of plaintiff's state-law claims required an individualized factual inquiry to determine disclosure and waiver issues. The *Mims* court denied both grounds of appeal, but remanded the case to the district court to determine whether it should retain pendent jurisdiction over the remaining state-law claims.[1]  590 F.3d at 301.  In its order denying reconsideration of its order denying class certification, the district court here noted that while the *Mims* case could call into doubt the district court's ruling on the proper class definition and proper proof of liability, it explained that its decision "did not rely solely on the problems raised by using internal guidelines as evidence of past insurance."  Rather, its order on class certification made clear that, even if it accepted Benavides's proposed class definition (which was similar to that affirmed in *Mims*), it would still deny class certification because there was still no common question capable of class-wide determination.

Benavides argues that the *Mims* decision held to the contrary: that questions of liability can be determined on a class-wide basis purely based on whether a plaintiff is a member of the class under Stewart's underwriting guidelines.  All that *Mims* held, however, was that the class definition was appropriate; not that there were any common class-wide questions, that those questions would predominate trial, or that mere membership in the class was sufficient to establish liability en masse.  While the *Mims* court stated in the Introduction that it saw "no legal impediment to the certification of a class on

---

[1] In *Mims*, the only purported bases of jurisdiction was 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (pendent jurisdiction).  In this case Benavides asserts jurisdiction under §§ 1331 and 1367 and 28 U.S.C. § 1332(d)(2)(A) as a class action where one class member is diverse from one defendant and the amount in controversy exceeds $5,000,000.

the state law claims," the issue Benavides raises was not before the *Mims* court on appeal. As the district court explained in its order denying class certification, Chicago Title does not contest that it owes the R-8 discount to everyone who qualifies. The only issues to be determined are therefore individualized inquiries as to whether particular persons qualify for the discount and were denied it.

The district court therefore did not abuse its discretion in denying plaintiff's motion for class certification.

## III.  CONCLUSION

The district court did not abuse its discretion when it determined that there were no common questions capable of class-wide determination. We therefore affirm the district court.

AFFIRMED.